JOHN T. KILBY, Administrator of SOPHIA LAWRENCE, deceased, and JOHN S. LAWRENCE,

*vs.*

JOHN GODWIN AND JOHN BULLOCK.

*New Castle, Sept. T.* 1838.

A post nuptial agreement that the wife shall enjoy, for her sole and separate use, property to which the husband has become entitled in her right, if upon sufficient consideration and not in fraud of creditors, will be enforced in equity.

Pending a suit·in equity by the wife against her husband for enforcing· an ante nuptial contract, it was agreed by the husband, as a compromise of the suit and in consideration of its dismissal, with the wife's consent, that one half part of certain funds held by him, in her right, should be for her sole and· separate use ; and·such half part was, pursuant to the agreement, delivered to the wife's solicitor and came to her possession and was afterward, during her last sickness, disposed of by her as a *donatio causa mortis*—*Held*, that the agreement was valid ; and that the funds delivered, in pursuance of it, became the wife's separate property, and passed by her disposal of them as a *donatio causa mortis*.

A *donatio causa mortis* defined. An actual delivery of the property essential ; but this may be made to a third person for the use of the donee. ·

A mother, in her last sickness, holding certain securities for her separate use, delivered the same, together with some articles of personal use, such as a watch and jewelry, to a third person, declaring them to be for the benefit of her two minor children ; and, with the securities and articles, also delivered an inventory of the same. She died in a few , days afterward—*Held*, a valid *donatio causa mortis*.

BILL IN EQUITY AGAINST A TRUSTEE FOR AN ACCOUNT AND FOR THE DELIVERY OF SECURITIES RECEIVED FOR COMPLAINANTS AS A DONATIO CAUSA MORTIS.—The bill alleged that Sophia S. P. Lawrence, now deceased, in her lifetime intermarried with the defendant, John Godwin ; that, by an ante nuptial contract, the property held by Mrs. Godwin before the marriage was secured to her sole and separate use ; that, after the marriage, the contract came to the possession of the husband and was destroyed by him ; that subsequently he received from the Executor of a former husband of Mrs. Godwin certain funds, to which she was entitled as widow of her deceased husband ; that a bill in equity was filed in the State of Virginia, where the parties then resided, in order to enforce the provisions of the marriage contract; which proceeding was compromised and the bill dismissed, pursuant to an agreement between the parties whereby the husband, Godwin, consented to the wife's separation from him, and that one half of the money and securities derived from the estate of Mrs. Godwin's former husband should be for her separate use ; and one

half the same was for that purpose left in the hands of Richard Baker, her solicitor in the suit in Virginia. That afterward Mrs. Godwin removed with her two children by a former husband, viz. Sophia A. Lawrence and John S. Lawrence to Wilmington, in the State of Delaware, where she died in October, 1833; that during her last sickness, and while in expectation of her death, she caused an inventory of the securities held for her use as aforesaid to be made and delivered to the defendant, John Bullock, together with the securities themselves, and also some personal chattels such as a gold watch, jewelry &c. · It was alleged that such delivery was made to John Bullock for the use of her two children, and as a *donatio causa mortis*, and that Mrs. Godwin died without recovering from her said sickness. The bill further alleged that John Bullock became the administrator of Mrs. Godwin, and that John Godwin had given him notice not to pay over the funds in his hands to Mrs. Godwin's children, claiming to be entitled to them himself. This bill was, therefore, filed by the administrator of the daughter, Sophia A. Lawrence, she being deceased, and by the son, John S. Lawrence. *Prayer*, that Bullock may account for the funds delivered to him by Mrs. Godwin in her last sickness, and that they may be paid over to the complainants.

The defendant, Godwin, by his answer* admits the marriage, and that prior to the marriage he agreed to enter into a stipulation in writing, that the property of his intended wife should not be liable for his debts; that such a writing was executed and placed in the hands of one William Scott, who after the marriage brought it to the defendant; but the defendant does not recollect whether he took it, or left it to remain with Scott. He admits the allegation of the bill touching the suit in chancery on the

* The answer of the other defendant, Bullock, is not set forth in the Chancellor's notes, and could not be found among the papers filed in the cause.

part of the wife in Virginia and the compromise and dismissal. of the bill, and that he did agree to place certain funds, which had come to him in her right, in the hands of Richard Baker, who was to collect and apply the same to her use, as she should need.   The defence made by the answer was, that the transfer of securities, under the compromise of the Virginia suit, to the solicitor of defendant's wife was not an assignment, but a provision for her support while living, such as not to affect the husband's title.   The answer also denied that there was a sufficient *donatio causa mortis.*

The cause was put at issue and a rule for commissions entered.   Depositions were taken, proving the execution of the marriage contract as alleged in the bill, and the contents thereof, to the effect that Godwin, the intended husband, should not receive any of the intended wife's property, without her consent, and that it should not be liable for his debts.   It was also proved that Godwin had stated that the contract was illegally executed, and that he had destroyed it; also that he had received from the estate of his wife's deceased husband funds to the amount of $4000, which the administrator, Robert White, testified to having paid over to Godwin, in ignorance that a marriage contract had been entered into.   Depositions were also read to prove that Mrs. Godwin, in her last sickness, at Wilmington, Delaware, and in view of her approaching death, sent for the defendant, John Bullock, and delivered to him the securities which she had received for her separate use under the compromise of the suit in Virginia, together with some articles of personal use, such as her watch and jewelry; and such delivery was expressed by her to be for the benefit of her two children, who were minors; that an inventory of the property delivered was made and compared with it by a witness to the transaction, Caleb P. Bennett; and the same was handed, with the property, to

Bullock. That Mrs. Godwin never recovered from her sickness, but died in a few days after.

The cause came before the Chancellor, at the September T. 1838, upon the bill, answers, exhibits and depositions.

*J. A. Bayard,* for the complainants.

The proof shows, beyond controversy, that there was a marriage contract, and that Mrs. Godwin held the property in question to her sole and separate use. If so, she had the absolute right to dispose of it; and her disposal of it as a *donatio causa mortis* was valid, and entitles the complainants. The delivery of the property to the defendant, Bullock, under the circumstances proved, was a clear case of a *donatio causa mortis.* 1 *Wms. on Exr's,* 650.

*R. H. Bayard,* for the defendant, Godwin.

The evidence as to the contents of the marriage contract does not prove that the intended wife's property was to be for her separate use, so as to be subject to her control and disposal, but only that it should not be subject to her husband's debts. Beyond this it remained his property, as a gift by the marriage, and was subject to his sole control. Then, with respect to the claim that the wife became entitled to her property, under the compromise of the Virginia suit, there was no valid transfer of it for the sole use of the wife. It was suffered to remain in the hands of her solicitor, Baker, to meet her necessities; but there was no assignment, and the husband never parted with the dominion over it. 1 *Ves. Jr.* 46, 49. *Clancy on Mar. Wom.* 259, 260. 2 *Kent. Com.* 439. Further, there was no *donatio causa mortis.* Such a disposal is contrary to the purpose of our Act respecting nuncupative wills, which prescribes

9

the only mode in this State for the disposal of personal property, otherwise than by will, to take effect after the death of the owner. *Dig. Del. Laws*, 557.

*J. A. Bayard*, in reply.

Our Act of Assembly respecting nuncupative wills does not touch the case of a *donatio causa mortis*. The essential difference between the two is that in the latter there is a delivery. Our case rests upon the proof of that fact.

JOHNS, JR., CHANCELLOR.—In this case, it appears that, pending a suit between husband and wife, instituted by her next friend in the Court of Chancery in Virginia, to enforce a contract alleged to have been made prior to marriage and which had been, after the marriage, destroyed without her consent, the husband and wife compromised the matter in controversy ; the suit was dismissed ; and, from the testimony of the solicitor who filed the bill and had charge of the business, it appears that bonds and other securities, which had constituted part of the wife's personal property under the will of her former husband, were, by the executors of the wife's former husband, delivered to Mr. Baker for collection; and the money, deducting charges, was to be remitted to Mrs. Godwin, with the assent and direction of the husband. It also appears that, after this compromise, the wife left the husband, and removed to the city of Wilmington, in the State of Delaware, where her two children by a former husband were at school, and refused to return or again cohabit with her husband. The deposition of the witness further establishes the fact that, according to the instructions and in pursuance of the agreement on the part of the husband, Mr. Baker collected and transmitted to Mrs. Godwin sundry sums recovered by him, which, remaining in her hands, she used as her own separate property, acquired

under the agreement of compromise and in part execution of the same. The personal property thus in her possession, in her last sickness, she delivered to Mr. Bullock, one of the present defendants, for the use of her two children. Letters of administration, after the death of Mrs. Godwin, were granted to Mr. Bullock, who has now the possession of the property. He has received notice from Godwin of his claim, and has been prohibited by him from paying over the same to the two children of the deceased. The administrator of Sophia A. Lawrence deceased, and John S. Lawrence, by his next friend, have filed their bill, and pray that their right to the same may be established and decreed, they claiming the same as a *donatio causa mortis* from their late mother, made by her to them of her separate personal property.

The agreement, so far as the property and money now in controversy is concerned, if valid, was executed. It is not alleged that there was any agreement in writing ; but as the testimony establishes the fact that there was an agreement and a consideration for the same, *i. e.* the compromise and dismissal of the suit in equity, the decision of this cause necessarily requires that the preliminary questions as to the validity of this agreement, and the condition of the property or money sent to Mrs. Godwin by Baker under and in part execution of the same, be first considered.

In *Rutland v. Mollineaux,* 2 *Vernon* 64, a *feme covert* had agreed to sell her inheritance; so as she might have £200 of the money secured to her. The land was sold, and the money put out in a trustee's name accordingly. The bill was brought by a creditor of the husband to subject this money to the payment of his debt, and charged that the wife promised and agreed it should be liable thereto. The Court say ; " this money shall not be liable to the payment of the husband's debts, nor shall any promise made by the

wife for that purpose, subsequent to the first original agreement, be obligatory on that behalf." In *Slanning et al. vs. Style,* 3 *P. Wms.* 337, it was contended, that there was no decree, nor any writing whatsoever, whereby to raise a separate property in a *feme covert,* which was what the law did not favor; that it was no more than a connivance or permission that the wife should take these things and continue to enjoy them during the husband's pleasure, which pleasure was determined by his death : besides, this agreement being after marriage was but a voluntary one, for which a court of equity usually leaves the party to take his remedy at law ; and that in truth the husband borrowing this £100 of his wife was no more than borrowing his own money.   But the Lord Chancellor Talbot decreed that the wife was well entitled to come in for this £100, as a creditor before the Master ; observing that " the courts of equity have taken notice of and allowed *feme coverts* to have separate interests by their husbands' agreement, and this £100 being the wife's savings, and there being evidence that the husband agreed thereto, it seemed but a reasonable encouragement to the wife's frugality ; and such agreement would be of little avail were it to determine by the husband's death ; that it was the strongest proof of the husband's consent that the wife should have a separate property in the money arising by these savings, in that he had applied to her and prevailed with her to lend him this sum ; in which case, he did not lay claim to it as his own, but submitted to borrow it as her money. Wherefore, and especially as here was no creditor of the husband to contend with, it was ordered that the wife should be allowed to come in for this £100, as a creditor before the Master; and the Court cited the case of *Calmady v. Calmady,* where there was the like agreement made between the husband and the wife, that upon every renewal of a lease by the husband two guineas should be paid by the tenant to the wife; and this was allowed to be her separate money."

The cases referred to do not appear to present as strong grounds of equity for relief as are exhibited in the one now under consideration.

The conduct of the husband in relation to the contract which the wife supposed was executed before marriage, his depriving her of the benefits of that contract, and afterward, when by her next friend she had instituted proceedings in equity to establish the contract, entering into an agreement and obtaining the dismissal of the suit and, in consequence thereof, acquiring the one-half of the unpaid balance of his wife's personal property—these circumstances, in connection with the situation of the wife, who, subsequent to the said agreement, left the husband and removed from Virginia to the State of Delaware, and never again cohabited, but lived separate from him, all concur in inducing me to consider the property which is the subject of the present suit as having been, in the lifetime of the wife, in her possession as her separate property, delivered to her in pursuance and in part execution of the agreement of compromise, as an equivalent and substitute for what she was seeking under the suit in equity.

The only question remaining to be considered is whether, being thus possessed of the property, she died intestate as to it, or disposed of it in her lifetime as a *donatio causa mortis.* If it was intestate property I have no doubt it would belong to the husband as personal property under the Act of Assembly.

A *donatio causa mortis* is where a person delivers, or causes to be delivered, to another the possession of any personal effects, to keep in case of the donor's death. An actual delivery of the thing given is the essential requisite to this species of legacy. The possession must be transferred in point of fact. If the delivery will not execute a complete gift *inter vivos,* it cannot create a *donatio causa mortis.*

A ring, a purse of gold, and such like articles that are capable of being delivered, will, when delivered, be good as a *donatio causa mortis.* But where a man on his death-bed gave his wife his coach and a pair of his coach horses, bidding three witnesses to take notice of it, who accordingly made a memorandum thereof in writing, it was held that this was no valid gift, there having been no delivery. 3 *P. Wms.* 356.

In the case before me, by the testimony of Mr. Bullock it appears that Sophia S. P. Godwin sent for him during her last illness and stated to him that she had property in her possession and, as she did not expect to recover from her then illness, she desired him to take charge of it for the benefit of her children, Sophia A. Lawrence and John S. Lawrence ; and proposed having an article of trust executed for that purpose, which he declined. She then insisted on his taking charge of the property, for safe keeping, for her two children. The property consisted of a gold watch, some articles of jewelry, notes of different banks, and some gold coins. An inventory of them was taken on the 22d of November, 1823 ; and they were handed to Caleb P. Bennet, who examined and compared them with the inventory, signed it with his proper signature and handed the property and inventory to Mr. Bullock. The witness further states that Sophia S. P. Godwin was then ill and confined to her bed, from whence she never arose, but died in a few days after ; that she made the disposition of her property in the full expectation of approaching dissolution, and frequently observed to Mr. Bullock that the property was her own *bona fide* property, and that she possessed the right to dispose of it, independently of any other person.

In this case it is apparent that the property was delivered to Bullock for the use of the children. In *Wells, Admr. of Craig v. Tucker and wife,* 3 *Binney's Reps.* 366, the Court decided that the delivery of a bond or personal chattel by

Opinion :—conclusion.

the owner in his last illness to his wife, for the use of a third person, is a sufficient delivery to make it a good *donatio causa mortis.* In *Bunn et al. vs. Markham et al.* 7 *Taunt.* 224 (2 *E. C. L.* 81) Burroughs J. at the conclusion of his opinion, remarks " In Burns' Ecclesiastical law all the cases are collected ; they all indicate that there must be a delivery, either to the donee himself or to some one else for the donee's use. In *Drury v. Smith,* 1 *P Wms.* 405, referred to in the case of *Wells v. Tucker,* it is said ; " the gift was supported, though to a third person for the use of an absent donee."

Under these decisions I am satisfied upon the point of delivery ; and am, therefore, of opinion that the complainant's claim is well founded, and that the personal property delivered into the hands of Mr. Bullock, for the use of the children of Mrs. Godwin, in her last sickness, belongs to them as a *donatio causa mortis.* But, as the bill filed in this cause does not state the amount claimed, and regards the defendant Bullock as having the property in trust under the gift, and prays for an account, I must make an interlocutory decree, ordering Mr. Bullock to file an account, on oath, of the articles and money delivered to him by Mrs. Godwin.

Decree accordingly.